IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LULLOWEN TERRELL STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-2307-JDT-dkv |
| | ) | |
| CECELIA LOVE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING PLAINTIFF'S MOTION TO AMEND,
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The *pro se* prisoner Plaintiff, Lullowen Terrell Stokes, who is incarcerated at the Shelby County Correctional Center ("SCCC") in Memphis, Tennessee, filed this action pursuant to 42 U.S.C. § 1983 on April 28, 2014, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) After Plaintiff submitted the required documents, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) Plaintiff filed a first amended complaint on October 5, 2014 (ECF No. 11) and a second amended complaint on December 5, 2014 (ECF No. 14).

The Court issued an order on April 8, 2015, dismissing the claims against Defendant Shelby County Division of Corrections but directing that process be issued and served on Defendant Cecelia Love. (ECF No. 17.) Defendant Love filed an answer on May 21, 2015. (ECF No. 24.) On May 29, 2015, Defendant also filed a motion to strike Plaintiff's second amended complaint because he

did not obtain leave to amend from the Court, as required by Federal Rule of Civil Procedure 15(a). (ECF No. 26.) The Court granted the motion to strike the second amended complaint over Plaintiff's objections. (ECF No. 31.)[1]

On August 18, 2015, a scheduling order was entered that set November 16, 2015, as the deadline for filing motions to amend or to join additional parties. (ECF No. 40.) Plaintiff did not file any motion to amend the complaint within that deadline. Instead, he waited until February 4, 2016, to file a motion to amend in which he apparently seeks to allege that his gynecomastia, *see supra*, note 1, is "newly discovered damage[]" that is attributable to the Defendant's actions. (ECF No. 62.) Defendant filed a response in opposition on February 5, 2016, on the basis that the motion to amend was filed outside the deadline set forth in the scheduling order. (ECF No. 63.)

Plaintiff filed a reply to Defendant's response to the motion to amend on February 17, 2016. (ECF No. 65.) The reply refers to a letter Plaintiff received from Defendant's counsel, dated September 3, 2015, in which counsel advised that, based on Plaintiff's refusal to answer questions at his deposition, Defendant intended to file a motion to dismiss or for other sanctions. (*Id.* at 1; *see also* 9/3/15 Letter, ECF No. 43-4.) Defendant did file such a motion on September 14, 2015. (ECF No. 43.) Plaintiff's reply in support of his motion to amend further states, "This petition was ultimately granted. My petitioning the Court to allow an Amended/Supplemental Complaint would have been moot. Considering my suit against the Defendant had been dismissed. I had to have my suit re-established before any further action could be requested." (ECF No. 65 at 1.)

---

[1] Plaintiff's second amended complaint did not include any additional allegations directly complaining about Defendant Love's actions. Instead, Plaintiff sought to allege that certain medications he was prescribed as a result of the alleged assault by Love caused a condition called gynecomastia, which caused a lump to form in his right breast, a diagnosis he received on November 13, 2014. (ECF No. 14 at 1-2.)

2

The Court is puzzled at Plaintiff's statement that the Defendant's motion to dismiss was granted, since the Court issued an order on November 5, 2015, specifically denying the motion. (ECF No. 48.)[2] Furthermore, Plaintiff's motion to amend makes it clear that he has been aware of his gynecomastia and the alleged cause since November 13, 2014. Plaintiff had ample time to file a motion to amend prior to the deadline of November 16, 2015, yet he failed to do so. Therefore, the motion to amend is DENIED.

On September 26, 2016, Plaintiff filed a motion for default judgment. (ECF No. 77.) He contends that Defendant has falsely asserted, in her answer (ECF No. 24) and in her statement of material facts (ECF No. 64-1), that she did not assault Plaintiff and has never admitted that she did. As purported proof of Defendant's perjury, Plaintiff submits a copy of Defendant's initial incident report, in which she states that she "pushed" Plaintiff off her when he brushed up against her. (ECF No. 77-1.)

Plaintiff apparently considers Defendant's statement that she did not assault him as an assertion that she did not touch him at all. However, that is clearly not the case. Defendant has never denied that she actually "pushed" or "shoved" Plaintiff, she merely asserts that her action did not amount to an assault because it was justified. Any inconsistencies in the Defendant's statements go to her credibility and, at this stage of the proceeding, will be considered in the determination of whether summary judgment is appropriate. Any such inconsistencies do not entitle Plaintiff to a default judgment. Therefore, the motion for default judgment is DENIED.

---

[2] Plaintiff made a similar statement about the Court's "decision" to dismiss the case in his response to the Defendant's motion to dismiss (ECF No. 47 at 1), and the Court specifically noted in the order denying Defendant's motion that, "Notwithstanding Plaintiff's reference to the Court's decision to dismiss this case, the Court had *not* already granted Defendant's motion to dismiss." (ECF No. 48 at 2 n.4.)

Defendant's motion for summary judgment was filed on February 11, 2016. (ECF No. 64.) Plaintiff filed a response in opposition (ECF No. 66), and Defendant filed a reply (ECF No. 67). Plaintiff then filed a sur-reply on April 13, 2016. (ECF No. 68.)

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

4

(3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh

5

the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Defendant contends she is entitled to judgment as a matter of law because she did not subject Plaintiff to excessive force. In addition, Defendant contends that even if Plaintiff's constitutional rights were violated, she is entitled to qualified immunity because the right which he claims was violated was not clearly established. In support of the motion for summary judgment, Defendant relies on Plaintiff's deposition (Stokes Dep., ECF Nos. 59, 60 & 61) and her own Declaration (Love Decl., ECF No. 64-4). In addition, Plaintiff's amended complaint is verified under penalty of perjury and has the force of an affidavit. (ECF No. 11 at 4.)

In his amended complaint, Plaintiff alleges that on January 21, 2014, he was returned to the SCCC after a court appearance. (*Id.* at 1.) After being strip searched near the intake sally port, he and other inmates and guards were standing around talking when Defendant Love entered and told the inmates to quiet down or they would be strip searched again. (*Id.*) Plaintiff then remarked that he "was going to be all the way quiet." (*Id.*) The Defendant then told him to come stand by the metal detector in an adjacent room, which Plaintiff took to mean he was going to be searched again. (*Id.*) As Plaintiff passed by her, Defendant Love "unexpectedly and very forcefully shoved [him] in the upper portion of back causing [his] neck and head to lash so violently that [he] experienced severe muscle strain; or what's commonly known as whiplash." (*Id.*)

Later that same evening, Plaintiff was taken to the Medical Block where he reported that he was having pain in his neck and was examined. (*Id.* at 2.) Subsequently, Plaintiff was charged with

assault on staff because Defendant Love contended that he had assaulted her by brushing up against her as he passed her. (*Id.*) That charge was dismissed, allegedly because no other officer would corroborate Defendant's accusation and because the video of the incident did not support her version of the incident. (*Id.*)

Plaintiff further alleges that he in March 2014 he was diagnosed with Post-Traumatic Stress Disorder and depression as a result of the incident and that he experiences significant pain from the injury, which has required pain medication as well as both oral and injected steroids. (*Id.*) Plaintiff also alleges that he was taken to an outside hospital for an MRI to see if there was any spinal damage but had not been allowed to see the results as of the date of the amended complaint. (*Id.*)

In Defendant's Declaration, she states that after she told the inmates standing around the sally port doorway to move out of the way, Plaintiff "yelled something," so she told him to stop talking and move out of the way. (Love Decl. ¶ 6, ECF No. 64-4 at 2.) Defendant then instructed Plaintiff to go through the metal detector a second time. She states that "[a]s he approached the scanner, although Mr. Stokes had enough space to walk through the doorway without walking toward me, he walked toward me and brushed up against my right arm." (*Id.* ¶ 7.) When Plaintiff brushed against her, Defendants asserts that she pushed him away from her because he was "inappropriately, potentially even dangerously, close to me. [Plaintiff] had already refused my instruction to be quiet, and I was unsure what his intention might be in coming so close to me." (*Id.* ¶¶ 8-9.) Defendant further asserts that she "believed [she] had no choice but to push Mr. Stokes away from me. I had no intent to cause Mr. Stokes any harm when I pushed him away." (*Id.* ¶ 10.) Although Plaintiff asserts that he did not touch the Defendant when he passed her, she states that

7

even if he had not, she would have responded the same way because he was dangerously close to her. (*Id.*¶ 12 at 3.)

In his deposition, Plaintiff testified that when he remarked that he was going to be quiet, the Defendant told him to "get over here right now." (Stokes Dep., Part 1, ECF No. 59 at PageID 314.) As he walked toward her, he asked if she was for real going to strip search him again, and she said yes. (*Id.*) He then stated, "[s]o, I walked passed [sic] her, when I walked pass [sic] her she just hauled off and shoved me in the back. Just like that, she just hauled off and shoved me in the back, almost pushed me down. Pushed me into another inmate." (*Id.*) Plaintiff stated that Defendant then yelled, "[g]et off of me." (*Id.* at PageID 316.) Plaintiff asked her, "[a]re you going to assault me?" to which she replied "[n]o, you assaulted me." (*Id.* at PageID 316-17.) Plaintiff testified that he did not make any physical contact whatsoever with the Defendant before she shoved him. (*Id.* at PageID 323.) He stated that he turned sideways to go through the doorway, and as he walked past, turning his back, Defendant shoved him. (*Id.*, Part 2, ECF No. 60 at PageID 351.) Plaintiff indicated that he would not have been able to get through the doorway as she had instructed if he had not walked toward her. (*Id.*)

Plaintiff further testified that he did not ask for medical treatment, but that same evening he was told he had to go to medical. (*Id.*, Part 1, ECF No. 59 at PageID 318.) When he was questioned about the incident, he told them there was only a mild throb in his neck and was given some Tylenol. (*Id.* at PageID 318-19.) However, he also stated that later he became unable to move his head without moving his whole body. (*Id.*, Part 2, ECF No. 60 at PageID 357.) Plaintiff testified that on or about February 19, 2014, he slipped on a wet floor, and although he caught himself before he fell,

8

he re-aggravated and exacerbated the neck injury from the incident with Defendant Love. (*Id.* at PageID 360-69.)

Plaintiff's claims arise under the Eighth Amendment,[4] which prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.

With regard to claims of excessive force by prison officials, "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted). That question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also Hudson*, 503 U.S. at 6-7. In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth

---

[4] As a convicted prisoner, Plaintiff's excessive force claim does not arise under the Fourteenth Amendment, but under the Eighth Amendment. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Therefore, the Court will construe Plaintiff's claim as being brought only under the Eighth Amendment.

9

Amendment claim. 503 U.S. at 7-9. However, the Supreme Court made clear that every physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind." *Whitley*, 475 U.S., at 327 , 106 S. Ct., at 1088 (quoting *Estelle*, *supra*, 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Id.* at 9-10.

The Supreme Court re-emphasized, however, in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), that claims of excessive force do not require any particular quantum of injury, and the extent of injury is only one factor bearing on whether the use of force was necessary in a particular situation. *Id.* at 37. The Court stated, "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Defendant argues that she is entitled to qualified immunity in this case because, in the context of excessive force claims, the right of an inmate to be free from a single push or shove was not clearly established, citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), and *Stanley v. Smith*, No. 2:07-CV-139, 2008 WL 4534434, at *6 (W.D. Mich. Sept. 29, 2008) (report and recommendation). The reasoning of these courts is that a single push or shove does not generally cause serious injury, which is often an indication that the force used was not excessive.

10

Defendant's contention that the right to be free from a single push or shove is not clearly established is foreclosed by the Supreme Court's holdings in *Hudson* and *Wilkins*. While a single push or shove *may* indicate that the force used was not excessive, the question is whether the force was used in good faith, in an effort to maintain or restore discipline, or whether it was used maliciously in order to cause harm. Thus, the Court finds that Defendant is not entitled to qualified immunity.

Defendant argues that she pushed Plaintiff only to get him away from her because he was too close, only one to two feet away, as he went through the doorway, and she did not know his intention. She also contends that she would have acted in the same way even if Plaintiff had not brushed her arm. The implication is that Defendant felt threatened by Plaintiff as he approached her. However, Defendant does not deny that she instructed Plaintiff to go through the metal detector again and that it was necessary for him to approach her in order to do so. The evidence in the record is disputed with regard to whether it was even possible for Plaintiff to have obeyed Defendant's instruction without coming as close to her as he did, as he stated in his deposition that he turned sideways to get through the door. The Court also notes that Defendant has not actually stated that she felt intimidated or threatened by Plaintiff or that he was behaving aggressively. She states only that he had failed to obey her instruction to be quiet. Thus, there is a factual dispute regarding whether Defendant acted in order to "maintain or restore discipline" or whether she shoved Plaintiff maliciously.

The evidence is also disputed with regard to the extent of Plaintiff's injury. Defendant points out that on the evening of the incident, Plaintiff told medical personnel that there was only a mild throb in his neck. However, as early as the next day he was unable to move his head without

11

moving his whole body. (Stokes Dep., Ex. 4, ECF No. 61 at PageID 394; *id.*, Part 2, ECF No. 60 at PageID 357.) He testified that he told medical personnel two days after the injury that he had pain that "shot down my back and up my back. Up to the base of my neck, down to the small of my back, like, in the middle of my shoulder blades, that's what I told him." (*Id.*, Part 2, ECF No. 60 at PageID 364.)

Plaintiff further testified that on or about February 19, 2014, he slipped on a wet floor, and although he caught himself before he fell, he re-aggravated and exacerbated the neck injury from the incident with Defendant Love. (*Id.*, Part 2, ECF No. 60 at PageID 360-69.) Defendant contends that Plaintiff's injury stems from solely from that February slip, but Plaintiff has consistently stated that the slip was not a "new" injury, but merely worsened the injury he sustained when the Defendant shoved him. In April 2014, Plaintiff was still having frequent, daily pain in his neck and back. (*Id.* at PageID 367-69; *id.*, Ex. 4, ECF No. 61 at PageID 404-05.)

The Court finds there are genuine issues of material fact for trial in this case. Therefore, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

   s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE